May I please the Court? My name is Serdia Lemberg. I represent Catherine Evon in this appeal. And with – may I request several minutes for rebuttal? Sure. I have the clock. Thank you. Catherine Evon incurred a debt. Catherine's Evon – Catherine Evon's debt was purchased by a company out of Colorado that transmitted it for collection to one of its franchisees in California, a franchisee that employs Sidney Mickell as a lawyer. And the entity that does the collection is therefore called the Law Offices of Sidney Mickell. Sidney Mickell sent Catherine a letter at home advising her that he had gotten the accounts and giving her the 1692G notice that she is entitled to under the Fair Debt Collection Practices Act. There were several communications with Catherine Evon. They called her on the phone several times. They called her at home. At some point a determination was made to send her a letter in care of her employer. That was done on Thursday the 15th. On the 19th, four days later, Sidney Mickell endorsed the complaint to be filed against her without waiting for her to get back to him regarding the letter that had been transmitted in care of her employer and sent it off. The letter, meanwhile, was delivered to Catherine – the employer's mailroom. It was placed in a bin designated for the legal department because whoever does the mail there apparently surmised that a letter from a law firm goes to the legal department. Who was it addressed to? It was addressed to Catherine Evon, care of Home Ex Servicing. So the law offices were not the addressee? The law offices were designated as the return address. The law offices of Sidney Mickell were designated as the return address on the envelope. But the employer was not the addressee. We contend, Your Honor, that Catherine Evon doesn't get, like most people out there, she does not get mail at work. She gets mail at home. But this is the question. To whom was it addressed? It was addressed in care of her employer. Well, I think we're all familiar with letters that are sent in care of an employer. I get letters here, but I don't expect you in the United States, my employer, to open them. In fact, it's probably illegal to open somebody's letter. It was addressed to them and sent care of someone else. I have an anticipation of coming here today, Your Honor, to examine Title 18, which deals with the delivery of mail, and my assessment of the relevant statute, and it's 18 U.S. Code 1702. I think it would be illegal to open somebody's mail with the intent of delving into their private and personal affairs. An employer who gets a letter from a law office at the place of employment, I think, is very likely to inquire as to what is inside the letter. In fact, most employers would be negligent not to. It is clear that a communication from a law office directed to an employee is not a consensual communication, because a client would be highly unlikely to give to a private attorney an address that is not their personal private address at home. Well, you don't know that. And I think lawyers and accountants and professional folk may be likely to get their letters at work delivered to them unopened, but I submit to the Court that that's not so for cooks and that's not so for cashiers. Are you speaking from wide general experience? Well, I think that Kmart or Walmart or any or the State of California would be at least highly inconvenienced by having to deliver to each one of their employees letters from debt collectors addressed in the care of the employer without opening them and making an inquiry as to what is going on. Well, whatever happened to her, she settled, correct? She accepted an offer of judgment. An offer of judgment for the statutory damages plus a few extra bucks, correct? Correct, yeah. All right. So why doesn't that just moot this whole case? I'll use my brother's argument. The argument in the opposing brief was, well, look, you can't have your cake and eat it, too. Well, the Supreme Court gives her essentially two cakes. It gives her the cake of her private personal action, and it gives her the Garrity Roper decision, gives her the cake of being a class representative and having the right to maintain that claim, on behalf of the class. We certainly ate one of the cakes, but not the other. The other cake is still out there. She never compromised her right to serve as a class representative.  Well, how does she represent the class when she doesn't have any personal interest? She certainly, Your Honor, has an interest in shifting the costs of the case to other class members or to the defendant. She certainly has an interest in declaratory relief that would be available in a B-2 situation rather than a B-3 situation. And if it were determined on remand that she isn't adequate because her status as a class representative is not sufficient, then perhaps we could solicit other class members and find a replacement. That would be an equitable, fair procedure to deal with that issue. She apparently was not willing to take the risk of going to trial on her own personal claim. She didn't want to risk the expenses of the attorney. But it would seem that she should have been willing to take that risk if she wanted to be the representative of the class. That's the thing that bothers me. Let me address that. Rule 68, the offer of judgment, there wasn't a choice. This wasn't a choice between proceeding to trial or not. Because had she gone forward to trial, there were two possibilities. She would have won, but in no event could she have recovered the amount in the offer of judgment, because that amount was higher than the statutory maximum. So had she won at trial, fees and costs would have been expanded on the, on trying the case, not to mention judicial resources, which are maybe even more important. Had she lost at trial, by operation of Rule 68, she would have been required to pay not only the costs of her own counsel, but also the costs of the opponents, incurred by the opponent in the trial, which would not be insignificant. Then in addition to that, had she lost in trial, I think there would have been a substantial likelihood of her being sanctioned with attorney's costs, with attorney's fees. Well, I understand what the risks would be to her, but she's apparently unwilling to take those risks. Your Honor, determination was made, and the advice she was given was that it wasn't appropriate. It wasn't a rational thing to do under the circumstances. I see that, and I think it's, for the debt collector, it's a very smart move on their part to try to put her in a position to no longer be able to represent the class. But maybe that's the result. It would have been an even smarter move, and I see it in my practice on a monthly basis, maybe not on a weekly basis, but Rule 68 offers are common. They are routine. There were two 68 offers here, correct? At the very end, there was one that included class claims, which was — which lapsed, and the second one, which neither admitted nor conceded the possibility of the class claims were being resolved. From which I surmise, using my two-cake analogy, that if you have one cake and you eat it, well, you still have the other cake. Now, there's another issue here. I don't want to be your time attorney now, but you had moved for attorney's fees, correct? That is correct, Your Honor. Now, is that because of the way in which the offer of judgment was framed? Absolutely. And so there's no dispute that you're entitled to an award of attorney's fees, correct? That's correct, yes. Now, you asked for quite a bit, a fee, quite a large amount of fees, and the judge gave you... 91,000. The judge gave you a nominal amount. So what's — where did he go wrong? I mean, I doubt that he would — any judge would give you 91,000, but maybe a little bit more than the nominal amount that he awarded. He gave us what they would in Brooklyn call bupkis. But the issue here is I think that the Congress, when Congress enacted the statute, and similar statutes, there's a number of them out there, with a fee-shifting provision. I think that Congress didn't mean, I have a very hard time believing, that Congress meant for attorneys who undertake representation in these cases to run off with their tail between their legs as soon as a case — as soon as defense counsel appear and puts on a vigorous defense. And this is what this case was. Defense counsel appeared. The defense was vigorous. The litigation spread over the course of a year. There were depositions. There were hearings. There were motions to compel. There were lengthy e-mail and letter exchanges. There were dispositive motions briefed. And at the end of the day, there was a judgment and access of the statutory maximum for the plaintiff. I think that we were entitled under the law of the circuit to an award of reasonable attorneys' fees and having recovered, in fact, more than we would have recovered at trial. And the reasonableness of those attorneys' fees we submit cannot be based on the $1,000 that is in the statute. I think — Well, you can look at — you know, our case law says you can consider the amount of the recovery. That is true. I mean, there is a significant difference between the $1,000 and the $91,000 that you were asking for. It doesn't have to be directly related, but it is a factor. It's something that the Court could have considered. And the Court — this was one factor that the Court could have considered among other factors. But we think that the Court simply — It's pretty clear from reading the transcript of all the hearings here that he wasn't very happy with this case. I think that's a fair statement, yeah. But at the end of the day, at the end of the day, I think that what we have to — what I want to convey to this Court is that settlement of fair debt collection cases is not that difficult. Defendants settle them all the time. Plaintiffs resolve them all the time. Probably in San Francisco today, half a dozen of them got settled. There's a mechanism for doing that, and there is a way for doing that, and there's protections that defendants for themselves in this adversary system, they protect themselves. They served these Rule 68 offers in the beginning. Now, if you want to keep litigating this case for a year from now, go ahead, but you're not going to get paid. And it didn't happen in this case. Okay. Thank you. Judge, do you want to save the balance of your time for rebuttal? Absolutely. Thank you, Judge. Good morning. Mr. Governor, why don't you just focus right now on your rebuttal, and then at the end you can pick up your argument on the sanctions. I've got 30 seconds on the sanctions. I'd first like to address just a few points that came up in counsel's oral presentation. In answer to Judge Noonan's question, not only was the letter addressed to Ms. Evon, but it was addressed with boldface type saying personal and confidential. So there was a clear intention by the sender that the employer not open, that no third party open this letter. Well, why was it sent to the employer? You knew her home address. You had contacted her there. What reason could you have other than wanting to call it to the attention of the employer? Well, they did not wish to call it to the attention of the employer. But the only ñ there was no record on that. There was an exchange at the first hearing where the court asked me the same question. Again, I could only give my understanding, which was not evidence. And that was that just as there are people who may not wish to receive these letters at work, there are probably an equal number of people who don't want to receive them at home. Well, now this ñ the facts of this case were that she had been written at home. She'd been called at home. She knew that they were after her to pay this debt. So what was the purpose of sending another letter to her employer other than to have it come to the attention of the employer? All I can say is that there was no evidence of that, and that the ñ I believe the only thing we had was my statement at the argument, which is that many people would prefer to deal with it at work where they have a phone. So that's just your ñ you're just surmising that. Yes. There was no evidence one way or the other in the record. But the evidence is that she did get a letter at home, and she was phoned at home. I believe there was an attempt to reach her at home, but I don't believe anyone ever reached her at home. But I have to say that I'm ñ I'm not clear on that part of the record. I want to address counsel's ñ Isn't there an interpretation of the statute by ñ the FCC ñ the ñ who is it that ñ it's the Commission of Fair ñ the ñ Trade Commission. The Trade Commission, is that it? Mm-hmm. That they've interpreted the relevant statute that these in-care-of letters should only be sent where the employee is not ñ where the employee has consented to having mail sent. No, Your Honor. In fact, in the briefing below, and I believe in the record below, we produced from the same administrative body comments on this particular kind of letter. My recollection is that there was a comment by the administrative agency that letters sent on a personal and confidential basis were not problematic. I'd be happy to send the citation to that evidence to the court after the hearing. It was in the briefs. But I don't read it ñ I don't remember saying just what you've represented. Well, let me address what I think is the crux and gateway issue here, which is the settlement. The settlement offer made pursuant to Rule 68, which, by the way, was accepted the day before the joint case management conference statement was due, and one week before the actual ñ I'm sorry, not case management, the pretrial conference statement was due, and only one week before a full and complete pretrial conference was to have occurred, that offer was accepted the day before. And the offer was general. It did not slice off any particular interest that Ms. Evon may have as a class representative to pursue her appeal. Far from it. Despite the general language of the offer, we put the offeree on notice that we were not reserving that issue in our offer. The proper course for the offeree was to have not accepted this and perhaps to have made a counter or to have tried to have gotten the case resolved in some other fashion. But she accepted it unequivocally. Counsel mentions the residual interest in answer to Judge Fletcher's question about shifting the cost of the litigation to prospective class members, which is mentioned in Garrity. That doesn't work here. As the Seventh Circuit recognized in the Muro case, when you have an offer coupled with an offer to pay the fees and costs which have been incurred, there are no residual costs to shift on to the class. The costs are all being paid by virtue of the Rule 68 offer. I believe the issues have been fully briefed here. I believe that all the issues other than attorney's fees are made moot by the acceptance of the offer. I'd be happy to answer any questions the panel may have. You know, if this practice is illegal, there ought to be a way for the debtor to challenge it without incurring all of the potential costs that come along with this type of litigation. Perhaps it's maybe further statutory amendment. Maybe that's the route that needs to be pursued. Or perhaps the Federal Trade Commission could say it's unethical to make this kind of an offer. I see, Your Honor. But, again, I don't think that is the road this panel needs to take to resolve this dispute in light of the settlement. One thing that complicates settlement in these cases is the request by a plaintiff for class action status and delaying the motion to certify until the last conceivable moment, indeed beyond that last conceivable moment. We're very much aware of case law from this circuit and the sister circuits that if you send a Rule 68 offer to a plaintiff whose class motion is unresolved, and if he or she accepts it, there is a looming question about what happens to the class. Of course, that didn't happen here because the class issue was resolved. But counsel, in fact, was the chief architect of the timeline here, and by delaying bringing that motion to certify until a month before the pretrial, we couldn't make an effective Rule 68 offer that was completely free of doubt. Thank you. Well, our brief points out, and I'm sorry to burden a busy court of appeals with a $1,200 sanction. I brought it. I am appearing pro se with regard to that issue because it is a State Bar reportable number, because it's over $1,000. Respectfully, the district court made only one finding, and that was that the breach of the protective order on my part, for which I am solely responsible, was inadvertent, not reckless, not intentional, and not in bad faith. You knew well about the protective order. Your one you had crafted. Indeed. And had asked for. Indeed. But it was at 4 o'clock on the filing day that I realized we hadn't attended to it. Well, so be it. Yeah. But you did violate your own order. That's true. But it was not intentional. You knew about it. It was willful. You knew about the order. Well, you knew. But the failure to put the documents in envelopes and seal them was inadvertent. Second, it didn't cause damage to the plaintiff. The plaintiff wasn't released of her obligation to seal other documents. Didn't they comply with the? They did. They did. They complied. They did. They also filed their papers at about midnight that night, and we couldn't do it. So, yes, I certainly admit I knew of the protective order, but the breach of the order was inadvertent, as the district court found. Well, I would think that it's mandatory. You violate a protective order, and we're very protective of the person who is protected by a protective order. And what's sauce for the goose is sauce for the gander. Thank you, Your Honor. It was my client's documents, though, not theirs. But I accept that. Thank you. Thank you. You had about a minute and a half or above. Your Honor, let me address a couple of issues that came up. The first one is what's the purpose of sending a letter to Catherine Yvonne in care of her employer? The only purpose is to make her sweat, and I think we know that. I think the court knows it. I think the defendant knows it, and that could have been and was the only purpose, whether it was on the record or not. I think we all know what the reason was. There was an attempt to reach her at work. They did reach her. They did speak with her, not once but several times. Private and confidential in care of issue. The private and confidential, the issue there was FTC opined, it's okay to put that label on an envelope sent to a consumer. That had not concerned an in-care-of-employer communication. They did, and it's in our brief, issue an opinion saying that a communication that's sent in care of, that it's only appropriate if the consumer lives at or receives the address. That's in the brief. In the consents. I'm sorry? In the consumer consents. In the consumer consents. The other issue I want to draw the Court's attention to, appellate record 1096, and that's a page of the defendant's, Sidney Michaels' training manual, and that training manual, the Fair Debt Collection Practices Act training manual, question number 42, says, is it true or false that is it okay to send a letter in care of a consumer? It is okay, only if the consumer lives at or receives mail at the address. And true is highlighted in black. That was the answer that they themselves required their collectors to accept. And I think that that's the binding answer on them, along with our interpretation of the statute, the FTCPA, which allows third-party contact only to correct or confirm location information or effectuate a post-judgment remedy, and collectors are allowed to do it only once, and they may not reveal their name in doing so. And this communication was not one of the statutory allowed communications with a third party, and therefore presumptively illegal. I believe I've gone over my time. Thank you. Thank you. Thank you, Counsel. The matter is submitted.
judges: Fletcher, Noonan, Paez